# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| MARILYN KAY GORMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:16-CV-05113-DGK-SSA |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Marilyn Kay Gorman ("Gorman") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found that Gorman was not severely disabled under the Act.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on April 11, 2014, alleging a disability onset date of January 29, 2014. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on August 18, 2015, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Gorman's request for

review on August 11, 2016, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

**Discussion**

Gorman argues the ALJ erred by: (1) finding Gorman's mental impairments are not severe; and (2) finding Gorman's physical impairments are not severe. After reviewing the record and the applicable law, the Court finds these arguments are without merit.

I. **Substantial evidence supports the ALJ's conclusion that Gorman's mental impairments are not severe.**

Gorman argues that the ALJ erred by finding her mental impairments are not severe. She believes that because she was diagnosed with mental impairments, her impairments are severe. She also claims that her treatment history with Jaime Zengotita, M.D. ("Dr. Zengotita")—her family physician—supports finding she has a severe impairment.

The ALJ evaluates whether the claimant's impairments are severe at the second step of the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment significantly limits a claimant's ability to do work-related activities. *See Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). The impairment must also be expected to result in death or have lasted—or be expected to last—for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. The severe impairment standard is not onerous, but it is not toothless either. *Kirby*, 500 F.3d at 708. It is the claimant's burden to establish severity. *Id.* at 707. To establish a severe mental impairment, the claimant must furnish objective medical and other evidence proving that her mental impairments resulted in either repeated episodes of decompensation or extended duration, or in more than a mild limitation of daily living, social functioning, and concentration, persistence, or pace. 20 C.F.R. § 404.1520(a)(d)(1). If a claimant has no severe impairments, the sequential evaluation process terminates at step two and the claimant is found not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

Gorman argues that because she was diagnosed with mental impairments, her mental impairments are severe. But diagnosis is not sufficient to prove a severe impairment. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) (finding diagnosis of depression and anxiety insufficient to show severe mental impairment). The ALJ cited evidence that Gorman was able to attend all of her personal care without problems; could prepare simple meals; perform light household chores; drive; go out alone; shop for groceries with her husband; pay bills; count change; and handle a savings account via checkbook. R. at 21, 155-57. *See* C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1) ("[W]e assess the quality of [claimant's daily living] by their independence, appropriateness, effectiveness, and sustainability We will determine the extent to which [claimant is] capable of initiating and participating in activities independent of supervision or direction."). Gorman testified that she was able to travel to California several times to visit her daughter and grandchildren. R. at 44. She testified that she did not have difficulty concentrating and that her leisure time includes riding a motorcycle. R. at 22. Substantial evidence supports the ALJ's conclusion that Gorman has only mild limitations in both her daily activities and her social functioning.

Gorman relies on Dr. Zengotita, who opined that Gorman has moderate to marked mental limitations. The amount of weight given a treating medical source opinion depends upon support for the opinion found in the record; its consistency with the record; and whether it rests upon conclusory statements. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). An ALJ must give controlling weight to a treating medical source opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Id.* The opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may

discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (citation omitted).

Here, the ALJ cited several instances where Dr. Zengotita's opinion was inconsistent with the record. Dr. Zengotita's records show that Gorman was consistently alert, oriented, and in no apparent distress. R. at 193, 212, 236, 282. They also show that her medication kept her mood stable enough so that she could travel several times to California. R. at 193, 201, 231, 271. Furthermore, Dr. Geoffrey Sutton, Ph.D—a mental health specialist and state agency psychologist—reviewed the record and opined that Gorman does not have severe mental impairments. R. at 21, 75-76. 20 C.F.R. § 404.1527(e)(2)(i) (state agency psychologists are highly qualified psychologists who are also experts in Social Security disability evaluation). Gorman argues that the ALJ erred by giving weight to Dr. Sutton's conclusions in the face of Dr. Zengotita's contrary conclusions. But agency regulations specifically afford more weight to specialists. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The mere fact that a physician is a treating physician is not good enough to overcome the better-supported opinion of a reviewing physician. *See Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014). Here, Dr. Sutton's opinion is better supported by the evidence, specifically, Gorman's examination records, the efficacy of her medications, and her daily activities.

The Court finds that substantial evidence supports the ALJ's decision to discount Dr. Zengotita's opinions and find that Gorman does not have severe mental impairments.

## II. Substantial evidence supports the ALJ's conclusion that Gorman's physical impairments are not severe.

Next, Gorman argues that the ALJ improperly concluded that none of her physical impairments were severe. Specifically, she believes that the ALJ failed to properly consider her headaches and improperly discounted Dr. Zengotita's opinions.

Gorman argues that her case requires the same disposition as *Smith v. Astrue*, 770 F. Supp. 2d 1002 (W.D. Mo. 2011). There, Smith's case was remanded for additional proceedings due to her migrane headaches. *Id.* at 1011. Gorman's case is substantially different from Smith's. First, Smith said she was unable to shower without someone present due to her headaches. *Id.* at 1004. Gorman testified that she had no problems with personal care, including bathing. Second, Smith sought extensive medical treatment for her headaches, including at least 14 doctors' visits over a five-year period. *Id.* at 1009. Gorman sought headache treatment five times at most. Smith also sought treatment from a headache specialist; Gorman did not. *See id*. *Smith* is unpersuasive here.

Gorman believes the ALJ erred by dismissing Dr. Zengotita's opinions. The ALJ noted that Dr. Zengotita's conclusions contradicted record evidence. *See Papesh*, 786 F.3d at 1132. Specifically, the ALJ found that Gorman's supposed physical limitations were inconsistent with Dr. Zengotita's treatment notes as well as evidence of Gorman's daily activities. R. at 21, 257-58. *See Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) ("Owen's activities of daily living do not reflect the physical limitations found by Dr. Paulsrud."). The ALJ also discussed Gorman's 2011 visit to the Mayo Clinic, where physicians recommended conservative treatment including medication changes, changes in stress, diet, and exercise. R. at 320, 330, 340. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2014) ("The ALJ also noted Milam's relatively conservative treatment history, which relied on a conservative course of treatment, including exercises, . . .

6

and medication."(quotations omitted)). Still, Gorman alleges that her daily activities were limited enough, and "not inconsistent with disabling conditions." Pl.'s Br. 21. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). The ALJ found that Gorman was not a credible witness because her daily activities were "not limited to the extent one would expect, given complaints of disabling symptoms and limitations," and because the medical evidence did not support finding that her conditions had more than a minimal effect on Gorman's abilities. R. at 19. The Court will not re-evaluate the credibility of Gorman's subjective testimony. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."). The ALJ's decision to discount Dr. Zengotita's opinion is supported by substantial evidence on the record.

The Court finds that substantial evidence supports the ALJ's decision to discount Dr. Zengotita's opinions and conclude that Gorman did not have severe physical impairments.

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   November 30, 2017          /s/ Greg Kays
                                                                                   GREG KAYS, CHIEF JUDGE
                                                                                   UNITED STATES DISTRICT COURT